Sandra JORDAN, et al.

v.

Joseph DORSEY, et al.

Civ. A. No. 81–1816.

United States District Court, E.D. Pennsylvania.

May 14, 1984.

Delaware County Legal Assistance Ass'n, Chester, Pa., for Mary Beth Semi-

nario, Margaret A. Lenzi and Michelle Terry.

Michael J. Ehling, Asst. County Sol., Media, Pa., for Dorsey and Taylor.

Eugene F. Jarrell, III, Media, Pa., for Apartment Comm. Corp.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

In May, 1981, plaintiffs, low income tenants in Delaware County, Pennsylvania, brought this action under 42 U.S.C. § 1983 seeking to enjoin defendants' practices of filing, entering, and executing upon confessed judgments for the possession of real property without giving plaintiffs any notice or a reasonable opportunity to defend against such action.

On June 8, 1983, after temporary injunctive relief had been granted and after a long period during which the parties attempted to settle this case, I entered an order granting plaintiffs' motion for summary judgment, holding, in relevant part, that:

> Defendants' practices in filing, entering and executing upon confessed judgments without providing an opportunity for a prejudgment entry challenge by tenants [as] to whether the waiver was knowingly and intelligently given violate plaintiffs' rights to due process of and equal protection of law guaranteed by the Fourteenth Amendment to the United States Constitution.

Plaintiffs now move for the award of attorney's fees.

42 U.S.C. § 1988 provides that in civil rights suits, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Attorney's fees should be awarded to a prevailing party unless special circumstances would make such an award unjust. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

Defendants do not contend that plaintiffs were not prevailing parties under § 1988.

Rather, the defendants contest their liability for and the amount of the attorney's fees.

## I. *Justness of Award*
### A. *Defendants Dorsey and Taylor*

Defendant Dorsey is the director of the Office of Judicial Support of Delaware County and defendant Taylor is the sheriff of Delaware County. These defendants argue that in entering and executing upon confessed judgments they were merely performing ministerial duties in compliance with the Pennsylvania Rules of Civil Procedure and thus should not be required to pay attorney's fees.

■ Good faith compliance with state law does not shield an individual from an award of attorney's fees. In *Supreme Court of Virginia v. Consumers Union of the United States,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), the Supreme Court of Virginia was sued for its role in promulgating, interpreting, and enforcing an allegedly unconstitutional disciplinary rule of the Virginia Code of Professional Responsibility. The United States Supreme Court held that although the Virginia Supreme Court was immune from damages liability for acts performed in its legislative and judicial roles, it was not immune from suit in its enforcement role. *Id.* at 734–36, 100 S.Ct. at 1975–77. In its analysis of the award of attorney's fees, the Court stated at 739, 100 S.Ct. at 1978:

> We are not convinced that it would be unfair to award fees against the State Bar, which by statute is designated as an administrative agency to help enforce the State Bar Code. Fee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or an injunction. Nor would we disagree had the District Court awarded fees not only against the Bar but also against the Virginia Court because of its own direct enforcement role.

■ Defendant Dorsey was responsible for recording judgments entered by confession and defendant Taylor was responsible for executing upon such judgments. It was these actions that I found violative of due process in granting plaintiffs' motion for summary judgment. The fact that defendants may have been performing ministerial functions in good faith compliance with state law does not immunize them from liability for attorney's fees. *See, e.g., Coalition for Basic Human Needs v. King,* 691 F.2d 597, 602 (1st Cir.1982); *Johnson v. Mississippi,* 606 F.2d 635, 637 (5th Cir.1979); *Finberg v. Sullivan,* 555 F.Supp. 1068, 1070 (E.D.Pa.1982), *aff'd,* 707 F.2d 1390 (3d Cir.1983). Permitting a good faith defense would frustrate the purpose of the Civil Rights Attorney's Fees Awards Act in encouraging the vigorous enforcement of the civil rights laws. *See Teitelbaum v. Sorenson,* 648 F.2d 1248, 1251 (9th Cir.1981).

### B. Defendant Apartment Communities Corporation

■ Although Apartment Communities Corporation (ACC) did not contest plaintiffs' motion for summary judgment, it now argues that, as a private landlord, it was not acting under "color of state law" in filing confessed judgments and thus cannot be held to have violated § 1983. It therefore argues that this court lacks subject matter jurisdiction over plaintiffs' claim against ACC, thus precluding an award of attorney's fees against ACC. I disagree.

ACC cites *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) in support of its argument. In *Flagg Brothers,* plaintiff claimed that a warehouseman's proposed sale under New York Uniform Commercial Code § 7–210 of goods entrusted to him for storage violated the due process clause of the fourteenth amendment. The Court held that the action of the warehouseman pursuant to the state statute, without more, was insufficient to justify his characterization as a "state actor," and thus no due process claim was presented.

*Flagg Brothers,* by its own language, is not controlling in this case. The Court stated that "[i]t must be noted that respondents have named no public officials as defendants in this action.... This total absence of overt official involvement plainly distinguishes this case from earlier decisions imposing procedural restrictions on creditors' remedies...." *Id.* at 157, 98 S.Ct. at 1734.[1]

Rather, this case is governed by the more recent Supreme Court decision in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In *Lugar,* a creditor, pursuant to state law, sought prejudgment attachment of the debtor's property. The prejudgment attachment procedure required only that the creditor allege in an *ex parte* petition, a belief that the debtor might dispose of his property in an effort to defeat his creditors. Acting on the petition, a clerk of the state court issued a writ of attachment, which was then executed by the county sheriff. The debtor then brought a § 1983 action alleging that the creditor, acting jointly with the state, deprived him of property without due process of law.

The Court concluded that the debtor had presented a valid § 1983 cause of action, stating that "we have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Id.* at 941, 102 S.Ct. at 2756. The Court noted that the rule in these cases is the same as that articulated in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) for equal protection deprivations:

" 'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under col-

---

1. *Luria Brothers & Co., Inc. v. Allen,* 672 F.2d 347 (3d Cir.1982), an action challenging a private landlord's posting of a notice of distraint under the Pennsylvania Landlord and Tenant Act, similarly involved no overt official involvement and thus is not controlling in this case.

or" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,'" *quoting United States v. Price,* 383 U.S. 787, 794 [86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966)].

*Lugar v. Edmondson Oil Co., supra* 457 U.S. at 941, 102 S.Ct. at 2756.

The conclusion that ACC is a state actor for purposes of this § 1983 action is amply supported by the line of garnishment and prejudgment attachment cases in which the Supreme Court entertained and adjudicated debtor claims that private creditors had violated constitutional standards of due process. *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In each of these cases, state officials aided the creditor in securing the disputed property.

Thus, ACC's contention that this court lacks subject matter jurisdiction of plaintiffs' claim against ACC must be rejected. ACC filed the confessed judgments which were then entered by the Office of Judicial Support of Delaware County and then executed upon by the county sheriff. The due process violation was a result of ACC's joint participation with state officials.

## II. Reasonableness of Fees

■ An award of attorney's fees is initially determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir.1973) (Lindy I). The resulting figure, or "lodestar," can then be adjusted upward or downward based upon a variety of factors, including the degree of success or the unusual quality of legal services. *Hensley v. Eckerhart, supra,* 103 S.Ct. at 1940; *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (*en banc*) (*Lindy II*).

## A. Hours

Plaintiffs were represented by Delaware County Legal Assistance Association (DCLAA). Over the course of the litigation, three attorneys from DCLAA participated in this case. Each has submitted an affidavit detailing the number of hours expended on this case, which can be summarized as follows:

### Mary Beth Seminario

| Year | Hours | Rate | Total |
|------|-------|------|-------|
| 1981 | 40.8 | $110.00 | $ 4,488.00 |
| 1982 | 49.3 | 110.00 | 5,423.00 |
| 1983 | 27.2[2] | 110.00 | 2,992.00 |
| | 117.3[3] | | $12,903.00 |

### Margaret Lenzi

| | | | |
|------|-------|------|-------|
| 1981 | 3.7 | 110.00 | 407.00 |
| 1982 | 41.0 | 110.00 | 4,510.00 |
| 1983 | 12.7 | 110.00 | 1,397.00 |
| | 57.4[4] | | 6,314.00 |

---

**2.** In addition to the initial fee affidavits submitted, plaintiffs filed an amended fee petition requesting an award for an additional 15.9 hours incurred in researching and writing a comprehensive brief in reply to defendants' answers to plaintiffs' motion for attorney's fees. The amendment, however, does not state who incurred the 15.9 hours for plaintiffs. I conclude it is reasonable to attribute one-third or 5.3 hours to Ms. Seminario and the remaining

10.6 hours to Ms. Terry. These hours are reflected in the above chart.

**3.** Ms. Seminario calculated her total hours, excluding 5.3 of the hours set forth in the amended fee petition which I attributed to her, to be 120.4. This is apparently a computational error.

**4.** Ms. Lenzi calculated that she spent 56.9 hours on this case. This is apparently a computational error.

Michelle Terry

| 1982 | 16.2 | 75.00 | 1,215.00 |
|------|------|-------|----------|
| 1983 | 13.0 | 75.00 | 975.00 |
| | 29.2[5] | | 2,190.00 |

$21,407

Plaintiffs sought to have defendants' practices declared violative of the due process clause and to enjoin defendants from filing, entering, and executing upon confessed judgments. Although plaintiffs obtained this relief, it must be determined whether it was necessary to expend all of the above hours in advancement of plaintiffs' claims. *Hensley v. Eckerhart, supra,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40.

■ Defendants first argue that attorney's fees should not be awarded for hours expended on behalf of certain named plaintiffs who were dismissed from this lawsuit. I agree. This action was initiated by plaintiff Kathleen Dintino in May, 1981. In November, 1981, Fred Hollingsworth intervened as plaintiff and Dintino's complaint was then dismissed. Then, in December, 1981, Sandra Jordan intervened as plaintiff and in March, 1982, plaintiff Fred Hollingsworth's claims were dismissed. Finally, in April, 1982, Rosemary Miller, Dwight West, and Christina West intervened as plaintiffs.[6]

Plaintiffs' counsel argue that they should be compensated for all hours expended on behalf of plaintiffs who did not remain in this case because such time was incurred in pursuit of the central claim of this lawsuit. This argument must be rejected for the simple reason that those plaintiffs who did not remain in the case were not "prevailing parties" in that the relief eventually obtained in this case was not granted as to them. Mary Beth Seminario spent 25 hours in 1981 and 5 hours in 1982 on behalf of such plaintiffs, performing services, such as interviewing, corresponding with these plaintiffs' landlords, and drafting various pleadings, which, it turned out,

were totally unrelated to the relief they eventually obtained for those plaintiffs who remained in the case. Thus, no award will be granted for these hours.[7]

■ It is next argued that no award should be granted for those hours counsel spent in attempting to settle this case through the adoption of a Delaware County Local Rule of Civil Procedure which would have improved the procedures concerning the filing, entering, and executing upon of confessed judgments. I agree.

In the course of this litigation, counsel spent many hours drafting, reviewing, negotiating, and lobbying for the adoption of a new local rule. Counsel argue that the adoption of a new local rule would have settled this case and that the hours spent in support of the rule should be compensated as settlement negotiations. I disagree.

Unlike the decision of opposing parties to settle a case, the decision to adopt a new local rule and thus obtain the relief sought was not within the immediate control of the parties in this case. Further, it is not clear that the adoption of a new local rule would have made this case moot. The new local rule may not have gone far enough in safeguarding plaintiffs' due process rights or, even if facially adequate, the new rule may have been poorly enforced. *See Finberg v. Sullivan,* 658 F.2d 93, 98 (3d Cir. 1981). Thus, counsel's efforts in negotiating with the Civil Rules Committee, which recommends Delaware County Court rule changes, and the Delaware County Court of Common Pleas which adopts new rules, though laudable, must be viewed as voluntary action which was not reasonably necessary to nor directly aimed at securing the relief sought by the present plaintiffs in this case. *See Finberg v. Sullivan,* 555 F.Supp. 1068, 1074 (E.D.Pa.1982), *aff'd* 707 F.2d 1390 (3d Cir.1983). Again, while counsel's lobbying efforts were exemplary, defendants in this case should only be required to pay attorney's fees for the hours

---

**5.** Ms. Terry calculated her total hours, excluding 10.6 of the hours set forth in the amended fee petition which I attributed to her, to be 22.7. This is apparently a computational error.

**6.** It is not clear what happened to plaintiff Jordan's claims. I assume they were settled.

**7.** I do not exclude those hours expended in developing legal theories which were later used to advance the cases of those plaintiffs who remained in the litigation.

counsel incurred in seeking relief for defendants' constitutional violations, not for counsel's hours incurred on behalf of the class of all low income tenants in Delaware County against the class of all defendants who filed, entered, or executed upon confessed judgments.[8]

Based on counsel's affidavits, I calculate that plaintiffs' counsel spent the following time on the adoption of a new local rule: *Mary Beth Seminario*—6.1 hours in 1982 and 4.4 hours in 1983; *Margaret Lenzi* —8.8 hours in 1982 and 6.1 hours in 1983. No award will be granted for these hours.

### B.   Rate per hour

Once the number of "reasonably necessary" hours for each attorney is determined, it is then necessary to fix a reasonable hourly rate based on an independent evaluation of each attorney. *Finberg v. Sullivan, supra,* 555 F.Supp. at 1075. Plaintiffs' counsel, though members of a nonprofit association, are entitled to receive the prevailing market rates for Delaware County lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson,* — U.S. —, —, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891, 899–900 (1984).

Mary Beth Seminario, a 1976 graduate of Temple Law School, was lead counsel in this case and had been practicing for almost five years when this litigation commenced in March, 1981. Although the extent of Ms. Seminario's legal experience before the inception of this case is not clear, she has been counsel in a number of state and federal civil rights cases, has co-authored a chapter on Pennsylvania landlord-tenant law for a *pro bono* practice manual, and has acted as a managing attorney for DCLAA. As of August, 1983, she was also the *pro bono* coordinator of the Delaware County Bar Association, overseeing the legal work of almost 200 attorneys.

Although Ms. Seminario requests an award for her services at $110 per hour, which she claims is the prevailing rate for

an experienced attorney/junior partner in Delaware County, it is not clear whether this was the prevailing rate in each of 1981, 1982, and 1983 nor is it clear whether Ms. Seminario had reached this level of experience as early as 1981, after only five years of practice. I conclude that based on her number of years in practice and the quality of the papers filed in this case, Ms. Seminario is entitled to an award based on the following rates:

| | |
|---|---|
| 1981 | $ 90.00 |
| 1982 | 100.00 |
| 1983 | 110.00 |

Margaret Lenzi has been employed at DCLAA since 1975 when she graduated from Temple Law School. She has been a managing attorney at DCLAA since 1978 and supervises the legal work of the office. She has been counsel in numerous state and federal civil rights cases. Ms. Lenzi also requests that her services be compensated at $110 per hour. Based on her experience and the quality of the briefs submitted in this case, I conclude that Ms. Lenzi is entitled to an award based on the following rates:

| | |
|---|---|
| 1981 | $100.00 |
| 1982 | 110.00 |
| 1983 | 110.00 |

Michelle Terry has been employed at DCLAA since 1978 when she graduated from the University of Pittsburgh Law School. Ms. Terry works primarily in the administrative law area and, before this case, did not have extensive litigation experience. Ms. Terry requests that she be compensated at the rate of $75 per hour, the rate prevailing for less experienced associates in Delaware County. Based on her experience, I conclude that Ms. Terry is entitled to recover for her hours at the following rates:

| | |
|---|---|
| 1982 | $65.00 |
| 1983 | 75.00 |

---

**8.** This case was never certified as a class action.

## C. Lodestar

Having determined the number of hours and the reasonable hourly rates, the lodestar can be computed as follows:

### Mary Beth Seminario

| Year | Hours | Rate | Total |
|------|-------|------|-------|
| 1981 | 15.8 | 90 | 1,422.00 |
| 1982 | 38.2 | 100 | 3,820.00 |
| 1983 | 22.8 | 110 | 2,508.00 |
| | | | 7,750.00 |

### Margaret Lenzi

| | | | |
|------|-------|------|-------|
| 1981 | 3.7 | 100 | 370.00 |
| 1982 | 32.2 | 110 | 3,542.00 |
| 1983 | 6.6 | 110 | 726.00 |
| | | | 4,638.00 |

### Michelle Terry

| | | | |
|------|-------|------|-------|
| 1982 | 16.2 | 65 | 1,053.00 |
| 1983 | 13.0 | 75 | 975.00 |
| | | | 2,028.00 |
| | | Total | $14,416.00 |

Thus, the total lodestar amount is $14,-416. Further, I find no reason to adjust the lodestar upward or downward. Although counsel argue that success in this case was uncertain and that their legal arguments were novel, the "novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee." *Blum v. Stenson, supra,* 104 S.Ct. at 1548–1549. The superior quality of representation is similarly reflected in the hourly rate and thus ordinarily will not justify an upward adjustment of the fee. *Id.* at 1549; *Ursic v. Bethlehem Mines,* 719 F.2d 670, 674 (3d Cir.1983).

There is equally no reason to adjust the fee downward. When the parties were unable to settle this suit, counsel had a responsibility to prosecute this action to obtain the relief sought and protect the important constitutional rights at issue. Although plaintiffs' summary judgment motion was, for the most part, unopposed, plaintiffs' counsel did not spend an excess amount of time on this motion nor on any other papers filed in this case. Plaintiffs' counsel's hours in this suit were very reasonable.

## III. Conclusion

For the above reasons, I will grant an award of attorney's fees in the amount of $14,416 and costs, which were uncontested, in the amount of $120.75. Defendants, whose interlocking actions in filing, entering, and executing upon confessed judgments resulted in the constitutional deprivations, shall be jointly and severally liable for these amounts.