**Joseph L., Jr. and Mary TUNSTALL; and Joseph Massey, On behalf of themselves and all others similarly situated**

v.

**OFFICE OF JUDICIAL SUPPORT OF the COURT OF COMMON PLEAS OF DELAWARE COUNTY and Grace Building Company, Inc. and Curtis Building Co., Inc.**

**Appeal of Joseph MASSEY.**

**No. 86–1482.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant To Third Circuit Rule 12(6) Feb. 23, 1987.

Decided June 9, 1987.

Jonathan M. Stein, Community Legal Services, Inc., Philadelphia, Pa., for appellants.

Alfred O. Breinig, Jr., Jenkintown, Pa., for appellees.

Before WEIS, BECKER and VAN DUSEN, Circuit Judges.

**OPINION OF THE COURT**

WEIS, Circuit Judge.

The question presented in this appeal is whether a purchaser of property at a sale conducted by a municipality to collect delinquent taxes acts under color of state law for purposes of 42 U.S.C. §§ 1983, 1988. We conclude that the buyer is not a state actor in that circumstance nor in later filing an action to quiet title in state court. Accordingly, we will affirm an order of the district court denying a request for an assessment of counsel fees against the purchaser.

After the parties in the underlying litigation settled their dispute, plaintiff Joseph Massey filed a petition with the district court requesting $12,393 in attorney's fees. The court denied the request, finding that "special circumstances" in the case would make it unjust to assess fees against Grace Building Company, one of the defendants.

The controversy arose out of the 1969 tax sale of a house owned by Joseph Massey and his late wife on West Cooke Avenue in Glenolden, Pennsylvania. The Delaware County treasurer sold the property for nonpayment of real estate taxes pursuant to the provisions of a state statute.

The Masseys had purchased the house in 1946 and lived there until they moved to New Jersey in 1966. They then rented the premises to their daughter and son-in-law, visiting them frequently.

Before the tax sale, the county treasurer sent certified mail notices addressed to Massey and his wife at the Glenolden address. One receipt was returned, apparently signed by Massey's daughter. Mrs. Massey purportedly signed the other receipt, although her husband controverted the genuineness of the signature. After the sale, the treasurer sent a notice by regular mail to the Masseys, advising them of the option of redemption. Neither Massey nor his daughter recalled receiving that notice.

In 1965 and 1966, the Masseys paid delinquent taxes on the West Cooke Avenue property only after receiving notice that the premises would be sold at a treasurer's tax sale. In October 1966, the property was sold at a tax sale for nonpayment of still outstanding 1964 taxes, but the Masseys redeemed it within the grace period.

The Masseys owned two other lots in the same area which were sold at the tax sale in 1969; however, they redeemed these properties the next year. From 1964 through 1969, the Masseys paid delinquent taxes on these two lots in many cases only after learning that the property would be sold at a treasurer's sale.

Grace Building Company purchased the West Cooke Avenue property at the 1969 tax sale. The Court of Common Pleas of Delaware County confirmed the sale nisi in January 1970, and because the Masseys took no exception to this decree, the county treasurer deeded the property to Grace.

After Grace acquired ownership, the Masseys' daughter and son-in-law continued to reside as tenants at the West Cooke Avenue house but paid no rent. Grace paid all real estate taxes due on the property from 1967 until 1971. On December 8, 1971, Grace began an action to quiet title in state court, intending to obtain possession of the premises.

In 1975, Massey and several other similarly situated plaintiffs filed a complaint in the district court alleging causes of action under 42 U.S.C. § 1983 against the appropriate Delaware County officials and various tax sale purchasers, including Grace. Plaintiffs sought a declaratory judgment that all Delaware County tax sales violated due process; they also asked for an injunction to prevent purchasers from commencing or proceeding with quiet title actions in the state courts. Finally, plaintiffs sought an order setting aside the tax sales as to those former owners who would pay all current and past due taxes plus penalties, interest, and costs.

The county agreed to discontinue the challenged notice practices, but contended it had no power to rescind the sales. The district court dismissed the complaint on abstention grounds; this court reversed and remanded the case in *Johnson v. Kelly*, 583 F.2d 1242 (3d Cir.1978).[1] During the course of the proceedings, all parties settled their claims. Massey agreed to reimburse Grace $1,800 for the taxes it had paid and, in return, Grace gave Massey a quitclaim deed for the property.

In denying Massey's petition for counsel fees, the district court assumed—although not without expressions of doubt—that Grace was a "state actor" within the scope of 42 U.S.C. § 1983 and that Massey was a "prevailing party" under 42 U.S.C. § 1988.

---

1. The *Johnson* decision is now subject to some question in light of the Supreme Court's opinion in *Pennzoil Co. v. Texaco, Inc.*, — U.S. —, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

The court then listed the special circumstances leading to its refusal to award attorney's fees to Massey. It stated that Grace played no part in and was powerless to prevent the alleged constitutional violation by the county, and that Grace acted in good faith throughout the entire history of the action. Finally, the court noted that Masseys' wounds were "self-inflicted"—the product of inaction by individuals who were experienced and thoroughly familiar with tax sale procedures. *Joseph L. v. Office of Judicial Support*, 638 F.Supp. 833, 836 (E.D.Pa.1986).

## I

An award of reasonable attorney's fees under 42 U.S.C. § 1988 is within the district court's discretion. This court may find an abuse of discretion when the district court uses improper standards or procedures in determining fees, or if it does not properly identify the criteria used for such a determination. *Black Grievance Comm. v. Philadelphia Elec. Co.*, 802 F.2d 648, 651 (3d Cir.1986). We may affirm the district court on any basis that finds support in the record. *Fairview Township v. EPA*, 773 F.2d 517, 525 n. 15 (3d Cir.1985). We have chosen to approach this case on the color of state law issue rather than the special circumstances exception.

## II.

Title 42 U.S.C. § 1988 provides that: "In any action or proceeding to enforce a provision of section[ ] ... 1983 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Thus, for Grace to be liable under § 1988 for fees, it must first state a claim under § 1983. *Moor v. County of Alameda*, 411 U.S. 693, 702, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973) (§ 1988 does not create an independent federal cause of action; it is merely intended to complement the various acts which do create federal

causes of action for the violation of federal civil rights).

To maintain a § 1983 claim, a litigant must allege and show deprivation (1) of a right secured by the Constitution and laws of the United States, (2) by a defendant acting under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978). The "under color" of law requirement has consistently been viewed in the same manner as the "state action" requirement under the fourteenth amendment. *See, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982).

Massey argues that Grace was "in joint participation with the local county court" by purchasing the Massey property pursuant to the then existing tax law.[2] To support this contention, Massey relies on *Lugar v. Edmondson Oil Co.* and *Jordan v. Dorsey*, 587 F.Supp. 282 (E.D.Pa.1984).

Both cases, however, are clearly distinguishable from the present set of facts. In *Lugar* and *Jordan*, creditors sought the aid of the courts to collect a debt. The *Lugar* creditors utilized prejudgment seizure of property. In this respect, *Lugar* resembles *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (prejudgment garnishment); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (prejudgment sequestration); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (prejudgment replevin); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (prejudgment garnishment). In *Jordan*, the creditors used confessions of judgment notes.

In the case at hand, it is critical to note that there was no pre-existing debt between Massey and Grace—Massey owed the delinquent obligation to the county. The county instigated the tax sale, not

---

**2.** Delaware County conducted tax sales pursuant to the County Return Act until January 1, 1976. Effective on that date its statutory exemption from the provisions of the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, No. 542, §§ 101–803, as amended, 72 Pa.Cons.Stat. §§ 5860.101–5860.803, was eliminated. *See* Act of July 3, 1974, P.L. 451, No. 157, § 1, 72 Pa. Cons.Stat. § 5860.102 (Purdon Supp.1986).

Grace. Grace simply purchased the property at a proceeding carried out by a local municipality in accordance with state law. Grace's first contact with the proceeding did not begin until the day of the sale. Its purchase of the property was not accomplished under color of state law as that concept applies to § 1983 cases.

Denial of counsel fees in this situation is supported by the decision in *Annunziato v. The Gan, Inc.*, 744 F.2d 244 (2d Cir.1984). In that case, taxpayers sued a municipality seeking a declaration that the transfer of a school building to a religious institution, The Gan, violated the establishment clause. Both the city and The Gan were named as defendants, and after the case was settled the district court awarded the plaintiff counsel fees under 42 U.S.C. § 1988 against both defendants. The court of appeals reversed the award against the institution, finding that "The Gan was not a state actor nor was it a wrongdoer clothed with the authority of state law." *Id.* at 251. Because the institution's sole action was to sign a contract with the city to purchase the school building, the court stated that "The Gan may not be held liable vicariously for any constitutional deprivation caused by the City, merely because it innocently executed a contract to purchase city property." *Id.* at 252. Adopting the *Annunziato* rationale, we conclude that Grace was not acting under color of state law in purchasing the Massey property at a tax sale.

### III.

Nor did Grace act under color of state law by filing a quiet title action in state court to gain possession of the property. That suit did not attempt any seizure of property with the cooperation of state officials as in the *Lugar* line of cases. The state litigation embraced no more than an effort to remove a cloud on title of property to which Grace held a presumptively valid deed.

Merely instituting a routine civil suit does not transform a litigant's actions into those taken under color of state law. As the Supreme Court said in *Dennis v. Sparks*, 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980), "[o]f course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Cf. Polk County v. Dodson*, 454 U.S. 312, 319, 102 S.Ct. 445, 450, 70 L.Ed.2d 509 (1981) (with respect to the defense of a criminal defendant, invocation of state legal process is "essentially a private function ... for which state office and authority are not needed").

Consequently, the simple step of filing a civil suit that never reaches judgment does not make the plaintiff a joint actor with the state. *See Cobb v. Georgia Power Co.*, 757 F.2d 1248 (11th Cir.1985) (regulated utility did not act under color of state law by obtaining a temporary restraining order from state court); *Dahlberg v. Becker*, 748 F.2d 85 (2d Cir.1984) (private party initiating state law contempt procedures does not constitute joint participation so as to satisfy the color of state law requirement under 42 U.S.C. § 1983), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); *see also Dahl v. Akin*, 630 F.2d 277 (5th Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1977, 68 L.Ed.2d 296 (1981); *Taylor v. Gilmartin*, 686 F.2d 1346 (10th Cir.1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083 (4th Cir.1979).

Because Grace did not act under color of state law in purchasing the Massey property or in filing the quiet title action, the plaintiff did not establish a cause of action under § 1983 against the company. Attorneys fees under § 1988 may be awarded only when the proceeding is to provide a remedy for a violation of § 1983, or the other specified sections. Since the plaintiff did not meet the prerequisites for an assessment of attorneys fees, Grace is not liable for such an award. Accordingly, the order of the district court will be affirmed.